FILED
United States Court of Appeals
Tenth Circuit

March 3, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,

     Plaintiff - Appellant,

v.

BARCLAYS CAPITAL INC.; BCAP
LLC; SECURITIZED ASSET BACKED
RECEIVABLES LLC,

     Defendants - Appellees.

--------------------

FEDERAL DEPOSIT INSURANCE
CORPORATION; SECURITIES
INDUSTRY AND FINANCIAL
MARKETS ASSOCATION,

     Amici Curiae.

No. 13-3183

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:12-CV-02631-JWL-JPO)**

---

David C. Frederick of Kellogg, Huber, Hansen, Todd, Evans & Figel, Washington, D.C.
(Wan J. Kim and Gregory G. Rapawy, Kellogg, Huber, Hansen, Todd, Evans & Figel,
Washington, D.C.; George Zelcs, Korein Tillery, Chicago, Illinois; Michael J. McKenna,
General Counsel, and John K. Ianno, Associate General Counsel, National Credit Union
Administration, with him on the briefs) for Plaintiff-Appellant.

Jeffery T. Scott of Sullivan & Cromwell, New York, New York (David H. Braff and J. Brendan Day, Sullivan & Cromwell, New York, New York; Michael J. Abrams, Lathrop & Gage, Kansas City, Missouri, with him on the brief) for Defendants-Appellees.

Jerome A. Madden, Counsel (Colleen J. Boles, Assistant General Counsel; Kathryn R. Norcross, Senior Counsel, with him on the brief), filed an amicus curiae brief for the Federal Deposit Insurance Corporation in support of Plaintiff-Appellant.

Michael J. Dell of Kramer, Levin, Naftalis & Frankel, New York, New York  (Aaron M. Frankel of Kramer, Levin, Naftalis & Frankel, New York, New York; and Ira D. Hammerman and Kevin Carroll of Securities Industry and Financial Markets Association, Washington, D.C. with him on the brief), filed an amicus curiae brief for the Securities Industry and Financial Markets Association in support of Defendants-Appellees.

---

Before **BRISCOE**, Chief Judge**, EBEL** and **PHILLIPS,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

The National Credit Union Administration Board ("NCUA"), the plaintiff-appellant, appeals the district court's order dismissing as untimely its complaint against Barclays Capital Inc., BCAP LLC, and Securitized Asset Backed Receivables LLC (collectively "Barclays"), the defendant-appellees.  We REVERSE and REMAND.[1]

## I.    BACKGROUND

The NCUA is an independent federal agency that regulates federally insured credit unions.  Among other duties, it is responsible for administering the National Credit Union

---

[1] We deny as moot NCUA's motion to expedite this appeal.

2

Share Insurance Fund and the Temporary Corporate Credit Union Stabilization Fund ("Funds"). The Funds, which are financed through premiums paid by all federally insured credit unions, protect the deposits of nearly 94 million account holders. Credit union failures cause losses to the Funds and risk destabilizing the entire credit union system. To avoid such a result, Congress authorized the NCUA to place failing credit unions into conservatorship to rehabilitate them and minimize losses to the Funds. Should a credit union fail despite being placed into conservatorship, the NCUA is further authorized to serve as the failed institution's liquidation agent. In both its capacity as conservator and as liquidation agent, the NCUA is empowered to bring suit on behalf of the credit union and use any money recovered through litigation to replenish the Funds.

This case arises from the failure of two of the nation's largest federally insured credit unions: U.S. Central Federal Credit Union and Western Corporate Federal Credit Union (the "Credit Unions"). The NCUA was appointed conservator of the Credit Unions on March 20, 2009, and was appointed their liquidating agent on October 1, 2010. Following an internal investigation, the NCUA determined that the Credit Unions had failed because they had invested in residential mortgage-backed securities ("RMBS") sold with offering documents that misrepresented the quality of their underlying mortgage loans. The offering documents stated that the mortgage loans adhered to specified underwriting criteria when, in fact, the loans did not. Despite having been marketed and sold with credit ratings of AAA or AA+, the suspect RMBS were ultimately downgraded to junk status after performing much worse than expected.

The NCUA set out to pursue recoveries on behalf of the Credit Unions from the issuers and underwriters of the suspect RMBS, including Barclays, and began settlement negotiations with Barclays and other potential defendants. As these negotiations dragged on through 2011 and 2012, the NCUA and Barclays entered into a series of tolling agreements that purported to exclude all time that passed during the settlement negotiations when "calculating any statute of limitations, period of repose or any defense related to those periods or dates that might be applicable to any Potential Claim that the NCUA may have against Barclays." Aplt. Br. at 8.

Significantly, Barclays also expressly made a separate promise in the tolling agreements that it would not "argue or assert" in any future litigation a statute of limitations defense that included the time passed in the settlement negotiations:

> For avoidance of doubt, Barclays agrees that it will not argue or assert in response to any Potential Claim that may be asserted against Barclays by the NCUA that the Excluded Time should be included in calculating any statute of limitations, period of repose or any defense related to those periods or dates.

Id. (emphasis omitted). By this language, the tolling agreements operated in a belt and suspenders mode. First, the parties agreed that any applicable limitation period in the Extender Statute itself would not include time spent in settlement negotiations that the parties agreed should be excluded. Then, as an additional precaution, the agreements provided that Barclays would not assert the excluded time as a litigation defense based on passage of time, even if the Extender Statute could not be directly tolled by an agreement excluding certain time from its calculations.

4

In reliance upon both the tolling agreement of the Extender Statute and the separate express promise not to assert a statute of limitations defense that relied on excluded time, the NCUA continued negotiating rather than immediately bringing suit to avoid a time limitations bar. The series of tolling agreements collectively purported to toll the limitations period from August 2, 2011, to September 12, 2012.

The NCUA negotiated similar tolling agreements with a number of RMBS issuers and underwriters while pursuing settlements. While some of the negotiations resulted in settlements, the NCUA was unable to obtain settlements from many of the issuers and underwriters, including Barclays. After negotiations with Barclays broke down, the NCUA filed this action on September 25, 2012—more than five years after the suspect RMBS were sold, and more than three years after the NCUA was appointed conservator of the Credit Unions. Alleging that the securities' offering materials contained material misrepresentations about the quality of the underlying mortgage loans, the NCUA asserted federal securities claims under Sections 11 and 12(a)(2) of the Securities Act of 1933 ("Securities Act") and state securities claims under the blue sky laws of Kansas and California.

Barclays moved to dismiss for failure to state a claim on several grounds, including untimeliness. Barclays initially honored the tolling agreements but argued that the NCUA's federal claims were nevertheless untimely under the Securities Act's three-year statute of repose, which, of course, is not waivable. The Securities Act statute of repose provides that "[i]n no event shall any . . . action [under Section 11] be brought . . .

more than three years after the security act was bona fide offered to the public, or under [Section 12(a)(2)] more than three years after the sale." 15 U.S.C. § 77m. If that statute of repose governed this case, that would be the end of the NCUA's Securities Act claims. However, the NCUA argued that the statute of repose in Section 13 of the Securities Act had been displaced in this type of action by the Federal Credit Union Act's "Extender Statute," 12 U.S.C. § 1787(b)(14), which the NCUA characterized as a statute of limitations. A statute of limitations, in contrast to a statute of repose, is waivable unless the statute says otherwise. Here, the Extender Statute provides:

> Statute of limitations for actions brought by conservator or liquidating agent
>
> (A) Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Board as conservator or liquidating agent shall be . . . in the case of any tort claim, the longer of the 3-year period beginning on the date the claim accrues; or the period applicable under State law.
>
> (B) [T]he date on which the statute of limitation begins to run on any claim . . . shall be the later of the date of the appointment of the Board as conservator or liquidating agent; or the date on which the cause of action accrues.

The NCUA argued that the Extender Statute gave it three years to file any claims that existed on the date it became conservator, and that the time periods excluded by the tolling agreements did not count toward the three-year period. Although the NCUA conceded that it had brought suit against Barclays three years and 190 days after it became conservator for the failed credit unions, it asserted that its claims were still timely because the Extender Statute's three-year limitation period was extended for 596 days by

6

the tolling agreements. Therefore, the NCUA argued, its suit was brought "well within" the time period afforded by the Extender Statute. Dist. Ct. Doc. 23 at 35.

While Barclays's motion to dismiss was pending, the district court in a separate case involving a different defendant, Credit Suisse, granted Credit Suisse's motion to dismiss a similar NCUA complaint on the grounds that contractual tolling was not authorized under the Extender Statute. See Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC, 939 F. Supp. 2d 1113, 1126 (D. Kan. 2013). Barclays, seeking to emulate Credit Suisse's success, then amended its motion to dismiss and asserted that, even if the Extender Statute displaced Section 13's statute of repose, the NCUA's suit was still untimely because the complaint was not filed within three years of the NCUA being appointed conservator to the failed Credit Unions, and that time period could not be tolled by agreement.

The district court agreed and dismissed the NCUA's complaint, incorporating by reference its opinion in Credit Suisse. The court thus rejected Barclays's argument that the NCUA's claims were time-barred under the statute of repose in the Securities Act—holding instead that the Extender Statute displaced that statute of repose. Nevertheless, the court dismissed NCUA's suit under the three-year limitations period of the Extender Statute, holding that the three-year period may not be extended by a tolling agreement. The court explained that the Extender Statute's "notwithstanding any provision of any contract" language indicated that the three-year period set an outer limit that may not be extended by agreement or equitable tolling. Thus, the NCUA was required to bring suit

7

by March 20, 2012, three years after its appointment as conservator; because the NCUA did not file this action until September 25, 2012, all of the NCUA's claims were time-barred. Doc. 60 at 4–5. Further, the court held that even though Barclays had separately promised not to assert a tolled limitations defense in any ensuing litigation, the doctrine of equitable estoppel did not bar application of the unmodified limitation period in the Extender Statute because applying that doctrine would "effectively eviscerate the 'notwithstanding' language in the Extender Statute." Doc. 70 at 8–9. The NCUA's state-law claims were similarly time-barred because the applicable five-year state limitations period had also lapsed. Id.

The NCUA appeals the district court's order granting Barclays' motion to dismiss, arguing that the suit was timely under the Extender Statute.

## II.    DISCUSSION

This court recently held that the Extender Statute supplants all other time limits, including the Securities Act Section 13's repose period, for suits brought by the NCUA on behalf of credit unions as conservator or receiver. See Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc., 764 F.3d 1199, 1242 (10th Cir. 2014). Nomura therefore forecloses any argument that the statute of repose under the Securities Act bars the NCUA's federal claims against Barclays.

Turning then to the Extender Statute, the NCUA had three years from the date the Credit Unions purchased the suspect RMBS to bring its federal-law claims, and arguably five years from that date to bring its state-law claims. The district court determined that

8

the last of the Credit Unions' RMBS purchases was made on June 12, 2007—giving

NCUA, at the latest, until June 12, 2010, to bring its federal claims and until June 12,

2012, to bring its state-law claims. This action was not filed until September 25, 2012,

outside both the three- and five-year limits.

The NCUA's claims are therefore outside the statute of limitations established by

the Extender Statute. However, the NCUA argued that the claims may still be timely

under either of two legal theories: either because the Extender Statute itself was lawfully

tolled by the tolling agreements, or because Barclays is estopped from pleading a statute

of limitations defense because of its separate promise not to assert any limitation defense

in future litigation with the NCUA that failed to exclude time spent in settlement

negotiations. We reject the NCUA's first argument, but accept the second argument.

A.  The Extender Statute's limitations periods cannot be tolled by contract, so the
    tolling agreements purporting to toll that statute of limitations are not effective.

Federal statutes of limitations can often be tolled by agreement. See Heimeshoff v.

Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 611 (2013) (explaining that ordinarily

"parties are permitted to contract around a default statute of limitations" and can "agree

not only to the length of a limitations period but also to its commencement"). However,

the text of the statute can override this general rule and prohibit tolling by agreement.

Here, the Extender Statute's opening clause states that "*[n]otwithstanding any provision

of any contract*," the limitations periods for actions brought by the conservation or

liquidating agent is the "longer of the 3-year period beginning on the date the claim accrues; or the period applicable under State law." This amounts to an express statement that the Extender Statute's limitations periods cannot be tolled by agreement. Because the Extender Statute cannot be tolled by agreement, contractual provisions purporting to toll that statute are ineffective.

However, the fact that a statute of limitations has expired does not mean that the defendant must be permitted to assert that defense in litigation despite promising not to do so. That brings us to the NCUA's second argument, which is meritorious.

B. <u>Barclays is estopped from asserting a statute of limitations defense because it agreed not to assert a statute of limitations defense that includes time that the parties agreed to exclude during settlement negotiations.</u>

Setting aside the contractual agreement <u>to toll</u> the statute of limitations—which, we have held, is unenforceable—we are left with Barclays' *additional* promise <u>not to assert</u> a statute of limitations defense in litigation that counted time agreed to be excluded, even if the limitations defense would be successful if asserted. The NCUA relied upon the tolling promises by Barclays in continuing settlement negotiations rather than breaking off negotiations and suing within the limitations period, and it is appropriate to hold Barclays to its promise. We therefore hold that, even though the NCUA's claims are outside the limitations period of the Extender Statute and that period

10

cannot be tolled by contract, Barclays is estopped from raising this statute of limitations defense.

As a threshold matter, we first hold that the Extender Statute is a statute of limitations, not a statute of repose. Succinctly, "[t]he former govern how long a claimant can bring an action after one has accrued; the latter govern whether an action can be brought regardless of whether it has accrued. It is possible for an action to be barred by a statute of repose before it ever accrues, effectively preventing a cause of action from ever arising." 4 Charles Alan Wright et al., Federal Practice and Procedure § 1056 (3d. ed. 2015). A statute of limitations "creates a time limit for suing in a civil case, based on the date when the claim accrued," CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2182 (2014) (quotation marks omitted), while a statute of repose

> puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose bars any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury. The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. The repose provision is therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability.

Id. at 2182–83 (quotation marks, citations, and alterations omitted).

It is sometimes difficult to distinguish statutes of limitations from statutes of repose, but that distinction has an important legal consequence. A statute of repose extinguishes a cause of action, while a statute of limitations just creates an affirmative

11

defense to that action.  See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008).   The critical distinction is that, unlike a statute of limitations, a statute of repose "is fixed and its expiration will not be delayed by estoppel or tolling."  CTS Corp., 134 S. Ct. at 2187–88 (2014)).  Several features of the Extender Statute's text make clear that the Extender Statute is a statute of limitations creating an affirmative defense, rather than a statute of repose extinguishing the cause of action.

First, the statute refers to itself as a "statute of limitations" and uses that term several times, while never mentioning the term "repose."  This is important, but not dispositive, because the phrase "statute of limitations" is often used loosely to encompass statutes of repose.  See CTS Corp., 134 S. Ct. at 2185.

Second, and dispositively, the Extender Statute repeatedly refers to the date a claim accrues.  This is consistent with a statute of limitations but not a statute of repose, because a statute of repose "is not related to the accrual of any cause of action.  Rather, it mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued."  Id. at 2187 (citations and quotation marks omitted).   By contrast, the Extender Statute here uses as a triggering event "the date the claim accrues," rather than a "right's duration."  Beach v. Ocwen Federal Bank, 523 U.S. 410, 417 (1998).

Third, the limitations period in the Extender Statute is not tied to a "fixed, statutory cutoff date . . . independent of any variable," see Nomura, 764 F.3d at 1224, as

12

is characteristic of a statute of repose.  Instead it is tied to a variable dependent upon an individual claimant's cause of action, which is a hallmark of a statute of limitations.

Fourth, elsewhere in 12 U.S.C. § 1787, of which the Extender Statute is a part, Congress demonstrated that it knew how to draft a statute of repose when that is what it intended.  See e.g. § 1787 (b)(6)(B) ("If any claimant fails to . . . request administrative review of any claim . . . or file suit on such claim . . . before the end of the 60 day period . . . the claim shall be deemed to be disallowed . . . as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." (emphasis added).   See also § 1787(b)(8)(O).  The Extender Statute language is notable in the different phraseology chosen by Congress.

Fifth, the policy and legislative history that pertains to the Extender Statute also supports construing it as establishing a statute of limitations, rather than a statute of repose.  According to Senator Donald W. Riegle, Jr., the then-Chairman of the Committee on Banking, Housing, and Urban Affairs and the Senate sponsor of the bill, Congress intended for the Extender Statute to be "construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods."  135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Sen. Riegle).  In line with the rule that substantial interpretive weight should be afforded to the statements made by sponsors of legislation, this Court and other courts of appeals have repeatedly relied on Senator Riegle's statement when interpreting

13

the purpose and scope of the Extender Statute. <u>See</u> <u>Nomura</u>, 764 F.3d at 1215; <u>UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.</u>, 168 F.3d 1173, 1178 (10th Cir. 1999); <u>SMS Fin., LLC v. ABCO Homes, Inc.</u>, 167 F.3d 235, 242 n. 21 (5th Cir. 1999); <u>FDIC v. N.H. Ins. Co.</u>, 953 F.2d 478, 486–87 & n. 2 (9th Cir. 1991).  Giving effect to that statement here would mean construing the Extender Statute to be at least amenable to tolling, waiver, and estoppel arguments (that is, as a statute of limitations), as opposed to construing it jurisdictionally to bar untimely suits without regard to the specific factual circumstances (that is, as a statute of repose).

Thus, because the Extender Statute is a statute of limitations,[2] its time limits establish only an affirmative defense that can be waived.  <u>Youren v. Tintic Sch. Dist.</u>, 343 F.3d 1296, 1302–04 (10th Cir. 2003).  The Extender Statute does not <u>mandate</u> or <u>require</u> a party to assert the Statute of Limitation defense that it provides, and to read that statute as imposing a limitation period that must be enforced irrespective of the wishes of the parties would simply recast it into a statute of repose, albeit a very odd one, and we have already rejected that argument.

Here, Barclays expressly promised not to raise the statute of limitations defense if doing so would require inclusion of time periods that the parties agreed to exclude, and we hold Barclays to that promise.

---

[2] <u>Accord</u>, <u>FDIC v. Jones</u>, 2014 WL 4699511 at *3 (D. Nev. 2014); <u>FDIC v. Kime</u>, 12 F. Supp. 3d 1113, 1119 (S.D. Ind. 2014); <u>FDIC v. Baldin</u>, 2014 WL 2581193 at 2–5 (S.D. W. Va. 2014); <u>FDIC v. Williams</u>, 2014 WL 5073605 at *3 (D. Utah 2014).

It is often the case that an affirmative defense is meritorious and would be successful if raised, but the defense is nevertheless unavailable to the party seeking to assert it, either because that party neglected to raise it in the timely fashion or because that party is estopped from asserting it. This is true even for many constitutional rights. Yates v. United States, 316 F.2d 718, 725 (10th Cir. 1963). So it is unremarkable that a party can be estopped from asserting a statute of limitations defense, particularly when its promise not to do so is limited in scope, between two parties of equal bargaining strength, and facilitates a strong public policy of encouraging settlements. Such is the case here. Thus, while it is true that the NCUA's claims are outside the statutory period and therefore untimely, that argument is unavailable to Barclays because the NCUA reasonably relied on Barclays's express promise not to assert that defense.

We therefore REVERSE and REMAND for further proceedings consistent with this opinion.

15